Bryant was indebted to Pearson, who recovered two judgments against him on 30 December, 1811, before a magistrate, for the sum of $67. *Page 433 
Bryant stayed the executions, giving the plaintiff security for the debts, and to indemnify him executed an absolute bill of sale to him for the negro sued for, on the day after the judgments were recovered.
At the same time the plaintiff executed to Bryant an instrument under seal, whereby he acknowledged the purpose for which the bill of sale was made, and promised to surrender it, under a penalty of £ 400, provided Bryant paid the judgments on or before 1 January, 1814. Both the above instruments were drawn by a person who was keeping store for the defendant.
Bryant, at this time, was indebted to the defendant, who in the following February warranted him, and, having recovered judgment, had the execution levied upon the negro, then in Bryant's possession, having so continued from the date of the bill of sale. The negro was sold and the defendant became the purchaser, to whom the constable made a bill of sale, and who then took the negro into possession, and had him when the suit was brought. The bill of sale to the plaintiff, as well as that to the defendant, was duly proved and registered; but the bond from the plaintiff to Bryant was proved and registered on (601) the day the trial took place in the Superior Court. The defendant knew of the conveyance to the plaintiff, and of the bond, before he sued out his execution.
The bill of sale purports to convey an absolute property in the slave, while, by a separate deed made at the same time, the title of the plaintiff is liable to be defeated upon Bryant's paying the amount of the judgments. To separate the defeasance from the deed is always a suspicious circumstance. Cockrell v. Purchase, Forrest, 61. Both deeds were registered within the time required by law, yet the latter, not being registered until the moment of trial, is strong indicative of a wish in the parties to cover half the transaction with the veil of secrecy. This is one of the badges of fraud in Twyne's case, Moore, 638. The plaintiff may be considered in the light of a creditor of Bryant's, who, by being permitted to retain the possession contrary to both deeds, was thus enabled by the plaintiff to gain a delusive credit, and thereby impose on third persons. (603)
From these special circumstances in the case my opinion is that the plaintiff is not entitled to recover; for, had the transaction been fairly designed, it would have been perfectly easy to have accomplished every justifiable object, and to have provided, at the same time, for Bryant's enjoyment of the property. *Page 434 
I must acknowledge that my mind hesitates in adopting the rule in the extent it is laid down at the bar, and as it is supported by respectable authorities, both British and American, that where possession does not accompany and follow the deed it is fraudulent in law. Nor can I reconcile with that rule Kidd v. Rawlinson, 2 Bos. and Pul., 59, where the title was in one person and the possession in another, yet it was left to the jury to decide whether, under all the circumstances, the transaction was fraudulent. Lord Elden, in giving his opinion in that case, cites Buller's Nisi Prius, 258, and adopts the doctrine, "The donor's continuing in possession was not, in all cases, a mark of fraud; as where a donor lends his donee money to buy goods and at the same time takes a bill of sale of them for securing the money." There were certainly many strong circumstances in the case tending to show that the transaction was fair, and that third persons could not be imposed upon by it; but if such circumstances can be inquired into, it proves that the terms in which the rule is laid down in the cases cited are too unqualified.